**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Dirk O. CAULEY, Defendant–Appellant.**

**No. 99CA1930.**

Colorado Court of Appeals, Div. V.

June 7, 2001.

Certiorari Denied Oct. 15, 2001.*

---

* JUSTICE BENDER would grant as to the following issues:

Whether in a prosecution for a single act of reckless child abuse resulting in death, CRE 404(b), 703 and 104 prohibit evidence of healing prior injuries that cannot be attributed to the defendant.

Whether Colorado should adopt the standards set in *Clark v. Cantrell*, 339 S.C. 369, 529 S.E.2d 528 (2000), to determine the reliability and admissibility of computer generated video evidence, and is that standard met with a video created by unknown data, and for a different case.

Ken Salazar, Attorney General, Miles D. Madorin, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Haddon, Morgan & Foreman, P.C., Rachel A. Bellis, Denver, CO, for Defendant–Appellant.

Opinion by Judge TAUBMAN

Defendant, Dirk O. Cauley, appeals the judgment of conviction entered upon a jury verdict finding him guilty of criminally negligent child abuse resulting in death. We affirm.

On the night of January 30, 1998, defendant called 911, and subsequently, an ambulance brought his three-month-old daughter to the Summit County medical facility. Because of the massive head trauma, she was transported to a children's hospital in Denver. Based upon her head trauma, the hospital treated her situation as a case of possible child abuse. The daughter died a few days later after being removed from the life support system.

The prosecution's theory at trial was that defendant's daughter was a victim of shaken baby syndrome and that defendant killed her by shaking her. It argued that his daughter's injuries were not consistent with his explanation of the events.

According to defendant's testimony at trial, he and his daughter had been lying on his bed when he heard the phone ring. Defendant got up with his daughter and ran to answer the phone, but he tripped and fell, landing on his daughter.

After a jury trial, defendant was convicted and sentenced to fourteen years in the Department of Corrections. He now appeals that judgment of conviction.

## I. Prior Injury Evidence

Defendant first contends that the trial court abused its discretion by allowing two expert witnesses to testify pursuant to CRE 703 about the healing rib fractures that they discovered during the daughter's autopsy and that formed a basis for one expert's opinion that the injuries were caused by shaken baby syndrome. We find no abuse of discretion.

Specifically, defendant contends that, even though the prosecution sought to admit this evidence only under CRE 703 and conceded that it was not admissible under CRE 404(b), CRE 703 cannot properly be used as a backdoor approach to admit evidence that otherwise would be excluded under CRE 404(b). He argues that, although it was admitted only under CRE 703, the evidence of his daughter's healing rib fractures should have been excluded by application of CRE 404(b) because it was character evidence of an uncharged act offered to establish intent and absence of accident concerning the charged offense. We disagree.

Trial courts have considerable discretion in determining the admissibility of evidence. Therefore, absent an abuse of discretion, an appellate court will not overturn a trial court's evidentiary determination. *People v. Ibarra*, 849 P.2d 33 (Colo.1993). Such an abuse of discretion occurs only when the court's evidentiary ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Wallen*, 996 P.2d 182 (Colo.App.1999).

Here, in a pretrial motion, the prosecution sought to admit evidence from the autopsy showing that the daughter had four healing rib fractures. It initially sought admission of these autopsy findings pursuant to CRE 404(b) as prior acts evidence and also pursuant to CRE 702 and 703 as a basis for the expert opinions of the coroner and the pediatrician, even though the coroner ultimately did not use this evidence as a basis for his opinion that the daughter suffered from shaken baby syndrome. At a pretrial hearing, the prosecution dropped its request that the evidence be admitted pursuant to CRE 404(b), but continued to seek admission of the evidence pursuant to CRE 703.

In an extremely thorough and detailed order, the trial court granted the prosecution's motion. The trial court anticipated the supreme court's decision in *People v. Shreck*, 22 P.3d 68 (Colo. 2001), in concluding that ad-

mission of expert evidence is controlled by CRE 702, rather than by the test set forth in *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923).

The trial court concluded that the evidence of healing rib fractures is the type of evidence reasonably relied upon by medical experts in forming their opinions about shaken baby syndrome and that such evidence was relevant here to the experts' conclusions that the cause of death was nonaccidental. The court also found that the evidence would not overwhelm or mislead the jury because it was based upon scientific medical research, observation, and opinion. The court went on to say that, based on *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the evidence need not show that defendant inflicted the prior injuries and that a limiting instruction would be given regarding this evidence. Finally, the court concluded that the evidence was relevant and that its probative value was not substantially outweighed by any danger of unfair prejudice.

### A. Testimony of the Coroner

■ We find no abuse of discretion in the trial court's allowing the testimony of the coroner regarding the rib fractures.

■ We will not reverse a conviction because of an erroneous evidentiary ruling if the error is harmless. Crim. P. 52(a). Harmless error is any error that does not substantially influence the verdict or affect the fairness of the proceedings. *People v. Snook*, 745 P.2d 647 (Colo.1987).

Here, the coroner, qualified as an expert in forensic and clinical pathology, testified on direct examination that he found healing rib fractures during the autopsy. This testimony was relevant to provide context to the coroner's observations and was not linked to any conduct by defendant. Thus, its probative value was not substantially outweighed by the danger of unfair prejudice. *See* CRE 402, 403. Further, the coroner stated that he did not rely on this evidence in reaching his conclusion that the daughter had suffered from shaken baby syndrome. Consequently, even if we assume that its admission was erroneous, any error was harmless.

### B. Testimony of the Pediatrician

■ We also find no abuse of discretion in the court's allowing the pediatrician, who observed the autopsy, to testify regarding the rib fractures as a basis of her opinion that the daughter had died as a result of shaken baby syndrome.

Pursuant to CRE 702, experts may offer opinion testimony. CRE 703 describes the permissible bases of opinion testimony as follows:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Here, the pediatrician, qualified as an expert in pediatric medicine and child abuse, testified that during the autopsy, the coroner observed four healing rib fractures on the daughter. According to the pediatrician, the presence of rib fractures in a child of that age was "very worrisome" because the child would have been unable to roll over or cause harm to herself, and the ribs of a child that young are extremely flexible and difficult to break. Therefore, the presence of rib fractures indicated nonaccidental trauma in an infant. The pediatrician did not testify that defendant had caused these fractures.

After this testimony, the court gave the following limiting instruction to the jury:

At this time you are instructed that you are not to consider [the evidence of broken ribs] for any purpose other than the limited purpose for which it was admitted. You are instructed that the injury to ribs is being offered because it is the type of evidence upon which experts in the field of child abuse rely ... to conclude that trauma is non-accidental in nature. There is no evidence to establish that Dirk Cauley inflicted the injuries to the ribs. You must consider the evidence only for the limited purpose that it is being admitted.

Defendant argues that, even though the evidence was offered under CRE 703, which allows an expert to rely upon evidence that is otherwise not admissible, its admissibility is also governed by CRE 404(b), which limits the admission of prior bad acts evidence. Otherwise, defendant contends, experts will be able to circumvent freely the procedural safeguards contained in CRE 404(b). We disagree.

Contrary to defendant's contention, we conclude that the trial court did not abuse its discretion in allowing the pediatrician to testify that the rib fractures were a basis for her conclusion that the daughter died as a result of shaken baby syndrome.

Here, the evidence of healing rib fractures was not admitted pursuant to CRE 404(b), and it was not offered to establish defendant's intent or the absence of accident concerning the charged offense. The expert's opinion was based upon facts reasonably relied on by experts in the medical field, and the information was relevant to the trier of fact to determine the cause of the daughter's death. *See* CRE 703. To prevent any undue prejudice, the trial court gave a limiting instruction, informing the jury that the evidence was to be used for a limited purpose and that there was no evidence linking defendant to the past injuries. In addition, the trial court carefully conducted the balancing test under CRE 403 by weighing the probative value of this evidence against any possible unfair prejudice that could result from its admission. Thus, the evidence was properly admitted.

Our conclusion is supported by *People v. Gordon*, 738 P.2d 404 (Colo.App.1987), in which the court held that a pediatrician qualified as an expert in the field of child abuse could testify as to the discrepancy between what the defendant reported had happened to his daughter and what the autopsy revealed. There, the pediatrician concluded that the baby's death resulted from violent shaking or nonaccidental whiplash. The court, without addressing CRE 404(b), concluded that the pediatrician's opinion was based upon facts or data reasonably relied on by experts in the field, *see* CRE 703, and assisted the trier of fact in determining a fact

in issue, namely that the child's death was not an accident. *See* CRE 702; *see also Estelle v. McGuire, supra* (although it did not discuss rules of evidence, the Court held that evidence of prior injuries, whether linked to a defendant or not, was probative on question of intent with which the person who caused the injuries acted; therefore, introduction of expert testimony relating to prior injuries to prove battered child syndrome does not violate a defendant's due process rights).

Consequently, we conclude that the trial court here did not abuse its discretion in allowing the experts to testify about the fractured ribs.

## II. Video Animation of Shaken Baby Syndrome

Defendant next argues that he was denied his right to a fair trial when the trial court abused its discretion in admitting a videotape that demonstrated the "mechanism of injury" for shaken baby syndrome. We disagree.

We will not disturb the court's evidentiary ruling unless it is manifestly arbitrary, unreasonable, or unfair. *People v. Wallen, supra*.

The admissibility of a computer-generated animation used to assist a witness in testifying is an issue of first impression in Colorado.

Other courts that have considered this issue have generally distinguished computer simulations from computer animations. *See Clark v. Cantrell*, 339 S.C. 369, 529 S.E.2d 528 (2000); *State v. Farner*, — S.W.2d — (Tenn.Crim.App. No. E 1999–00491–CCA–R3–CD, 2000 WL 872488, June 30, 2000)(collecting cases)(*cert. granted* Feb. 12, 2001). These courts have defined simulations as recreations or experiments based upon scientific principles and data. In a simulation, data is entered into a computer, which is programmed to analyze and draw conclusions from it. The validity of the conclusions drawn depends on proper application of scientific principles. Because the results of the simulation are dependent upon the application of scientific principles for the purpose of

admission, simulations are treated like other scientific tests. *See Constans v. Choctaw Transport, Inc.*, 712 So.2d 885 (La.App.1997); *Commercial Union Insurance Co. v. Boston Edison Co.*, 412 Mass. 545, 591 N.E.2d 165 (1992).

■ In contrast to a simulation, an animation is demonstrative evidence used to illustrate a witness' testimony. Within the category of animations, courts have distinguished between experiments or demonstrations that purport to recreate an event and illustrations of a general principle. *See Gilbert v. Cosco, Inc.*, 989 F.2d 399, 402 (10th Cir.1993)("experiments which purport to recreate an accident must be conducted under conditions similar to that accident, while experiments which demonstrate general principles used in forming an expert's opinion are not required to adhere strictly to the conditions of the accident"). Thus, like a simulation, an animation may be in the form of a recreation of an event. However, an animation is distinguishable from a simulation because it is demonstrative, rather than scientific, and the validity of the conclusion does not depend on proper application of scientific principles.

Here, although the trial court explained that "computer simulation itself is an animation," it described the video as a simulation in its order. However, we conclude that, based upon the above distinctions, the video presented here is properly characterized as an animation. This is so because it demonstrated the injuries that can occur when a baby is shaken. Thus, because the video did not purport to be a recreation and was used to demonstrate general principles, it was an animation. Accordingly, our analysis here is limited to the category of animations.

■ A computer animation is admissible as demonstrative evidence if the proponent of the video proves that it: 1) is authentic under CRE 901; 2) is relevant under CRE 401 and 402; 3) is a fair and accurate representation of the evidence to which it relates; and 4) has a probative value that is not substantially outweighed by the danger of unfair prejudice under CRE 403. *See Clark v. Cantrell, supra; State v. Farner, supra.* An item of demonstrative evidence is authenticated if there is evidence to support

a finding that the item is what its proponent claims it to be. CRE 901. Once authenticity is established, defects in physical evidence go to the weight of that evidence, not its admissibility. *People v. Lesslie*, 939 P.2d 443 (Colo.App.1996).

In addition, appellate courts have encouraged trial courts to give cautionary or limiting instructions to the jury when admitting computer generated evidence. *See Clark v. Cantrell, supra.*

Here, through a motion *in limine*, the prosecution offered a three-and-a-half-minute video animation depicting how injuries are caused by repeatedly shaking a baby. This video demonstrated that subdural hematomas and retinal hemorrhaging occur from shaking. The video had no sound, but two written phrases appeared on the screen.

We conclude that the trial court did not abuse its discretion in admitting this video, because the court conducted a careful and thorough review similar to that described in *Clark v. Cantrell, supra*, prior to admitting it. The court ensured that the above admissibility requirements were met and then gave the jury an appropriate limiting instruction.

Thus, as to the first requirement, before an animation may be admitted at trial, it must be authenticated pursuant to CRE 901, i.e., the proponent must demonstrate that the evidence is what it is claimed to be. Here, in its motion *in limine* to introduce the video, the prosecution stated that it intended to use the video, which was prepared by a computer graphics company for a different case, to show the types of injuries generated by shaking a baby. At the hearing on this motion, the prosecution specifically asserted that, because the expert would testify regarding subdural hematomas and retinal hemorrhages, the video would assist the jury by showing how and where injuries occur in cases of shaken baby syndrome. We conclude that these assertions, to which defendant did not object, were sufficient to authenticate the video pursuant to CRE 901.

■ As to the second requirement, an animation must also be a fair and accurate representation of the evidence to which it

relates. At trial, this requirement was satisfied when the expert witness stated that she believed the video fairly and accurately described shaken baby syndrome, and she agreed with the prosecutor that the video "fairly depict[ed] the type of injuries and the movements" that cause shaken baby syndrome.

As to the third requirement, evidence is relevant when it has any tendency to make a fact in issue more or less probable than it would have been without the introduction of the evidence. CRE 401. Here, in its order, the trial court found that the video was relevant to the expert's opinion regarding the manner in which shaken baby syndrome injuries occur.

As to the fourth requirement, under CRE 403, evidence that is otherwise relevant may be excluded if its unfair prejudicial effect substantially outweighs its probative value. Here, the court carefully conducted the CRE 403 balancing test. In so doing, it specifically rejected defendant's claim that the video was extremely violent and therefore unfairly prejudicial.

Finally, the court instructed the jury on the limited purpose of this video, stating that the "videotape is offered to help the expert explain the type of injuries which in her opinion can be caused by shaking an infant. The prosecution must still meet the burden of proof regarding all elements of the offense."

Because the trial court properly considered all of the requirements for admitting computer animation evidence and also gave an appropriate limiting instruction, we find no abuse of discretion here.

### III. Lesser Nonincluded Offense

Finally, defendant argues that the trial court violated his right to a fair trial by refusing to instruct the jury on the lesser nonincluded offense of reckless endangerment. We are not persuaded.

A lesser nonincluded offense may be any offense lesser in severity than the charged offense, provided that such lesser offense arises from the same facts leading to the original charge and has at least one

element not required for the charged offense. *People v. Skinner,* 825 P.2d 1045 (Colo.App. 1991).

A defendant may request a lesser nonincluded offense instruction when there is a rational basis for the jury to acquit the defendant of the charged offense and convict the defendant of the lesser offense. *People v. Garcia,* 17 P.3d 820 (Colo.App.2000).

Here, defendant was charged with "child abuse resulting in death recklessly." The jury was also instructed on the lesser included offense of "child abuse resulting in death criminal negligence." In addition, defendant requested a jury instruction on the lesser nonincluded offense of reckless endangerment, pursuant to § 18-3-208, C.R.S. 2000. He argued that, by running through the house carrying his infant daughter in his arms, he acted recklessly and that her death was a result of that recklessness. The trial court denied his request, and the jury convicted defendant of child abuse resulting in death criminal negligence, the lesser included offense.

We conclude that the trial court did not err by refusing to instruct the jury on the lesser nonincluded offense of reckless endangerment, because there was no rational basis upon which the jury could have convicted defendant of that offense and acquitted him of child abuse resulting in death.

As relevant here, pursuant to § 18-6-401(1)(a), C.R.S.2000, a person commits child abuse by causing "an injury to a child's life or health, or permit[ting] a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health." The *mens rea* determines the level of culpability. If a person acts knowingly or recklessly and the abuse results in death, it is a class 2 felony. If a person acts with criminal negligence and the abuse results in death, it is a class 3 felony, and defendant was so convicted here pursuant to § 18-6-401(7)(a)(II), C.R.S.2000.

Reckless endangerment occurs when a person creates a substantial risk of serious bodily injury to another person. Section 18-3-208.

Here, it is undisputed that defendant's actions ultimately caused the death of his daughter. Death is not an element of reckless endangerment. Because it was undisputed that defendant's actions caused the death of his daughter, reckless endangerment does not accurately describe his actions. Consequently, there is no rational basis upon which the jury could have acquitted defendant of child abuse resulting in death and convicted him of reckless endangerment, and the trial court did not err in refusing defendant's instruction.

We are not persuaded by defendant's argument that *People v. Williams*, 23 P.3d 1229 (Colo.App. 2000), demands a different result. In *Williams*, the defendant was charged with first degree murder. His theory of the case was that he was at the crime scene, but did not participate. The prosecution requested and received a jury instruction on the lesser nonincluded offense of first degree assault, even though death was not an element of the crime of assault. The defendant was subsequently convicted of first degree assault.

Based on *Williams*, defendant argues that death need not be an element of the lesser nonincluded offense. Defendant's argument is flawed. In *Williams*, the lesser nonincluded offense of assault was consistent with the defendant's theory of the case-that he was present at the scene but did not cause the victim's death. Here, in contrast there is no dispute that defendant caused his daughter's death.

Therefore, we find no error in the trial court's refusal to instruct the jury on the lesser nonincluded offense of reckless endangerment.

Judgment affirmed.

Judge KAPELKE and Judge NIETO concur.