The PEOPLE of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,

v.

Jacques RICHARDSON, Defendant–Appellant and Cross–Appellee.

No. 99CA1230.

Colorado Court of Appeals, Div. V.

Feb. 14, 2002.

Rehearing Denied April 4, 2002.

Certiorari Denied Dec. 2, 2002.[1]

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado; A. William Ritter, Jr., District Attorney, Robert J. Whitley, Deputy District Attorney, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

David S. Kaplan, Colorado State Public Defender, Christopher H. Gehring, Andrew C. Heher, Deputy State Public Defenders, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge DAVIDSON.

Defendant, Jacques Richardson, appeals from the judgment of conviction entered upon jury verdicts finding him guilty of felony murder, second degree murder, and second degree burglary. By cross-appeal, the People seek disapproval of a trial court ruling precluding consideration of certain aggravating factors for purposes of capital sentencing. Because no sentence of death was imposed, we have jurisdiction over this appeal and cross-appeal. Sections 16–12–202(2) and 207, C.R.S.2001. *See also* Crim. P. 32.2, § 13–4–102(1)(h), C.R.S.2001. We agree with the People and otherwise affirm.

Police observed defendant leaving the victim's apartment through a window and subsequently arrested him. The victim was found hog-tied and not breathing inside the apartment. Although briefly resuscitated, the victim never regained consciousness and subsequently died from brain damage caused by ligature strangulation.

Defendant was charged with first degree murder after deliberation, first degree felony murder, and second degree burglary. The jury found defendant guilty as charged on the latter two counts, but on the first charge found defendant guilty of the lesser included offense of second degree murder. Defendant was sentenced to a single term of life imprisonment without parole.

## I.

Defendant first contends that his constitutional right to a fair trial was violated when the trial court denied his challenges for cause to two jurors. We disagree.

■ An impartial jury is fundamental to a defendant's constitutional right to a fair trial. *Morrison v. People,* 19 P.3d 668 (Colo.2000). A trial court must sustain a challenge for cause if there exists "a state of mind in the juror evincing enmity or bias toward the defendant or the state," unless the court is satisfied that the juror "will render an impartial verdict according to the law and the evidence submitted to the jury." Section 16–10–103(1)(j), C.R.S.2001; Crim. P. 24(b)(1)(X).

■ Trial courts have considerable discretion in ruling on challenges for cause because the trial judge is in the best position to assess the credibility, demeanor, and sincerity of the potential juror's responses, including statements that linguistically may appear to be inconsistent. Rulings on such challenges are reviewed under an abuse of discretion standard. *Carrillo v. People,* 974 P.2d 478 (Colo.1999). A ruling will be reversed as an abuse of discretion only if there is no evidence in the record to support it. *People v. O'Neal,* 32 P.3d 533 (Colo.App. 2000). *See also People v. Young,* 16 P.3d

821, 825 (Colo.2001)("Reversals on juror challenges, however, should be rare.").

## A.

■ Defendant contends that the trial court erred in denying his challenge for cause to a juror who had multiple associations with law enforcement personnel. Specifically, defendant argues that the juror's statements indicated a belief that police officers are more credible than other witnesses and also indicated bias in conjunction with the juror's extensive contacts with law enforcement personnel. We disagree.

The potential juror stated that his brother-in-law was a Denver sheriff, and when asked if he had a law enforcement background, the juror stated that his family "surrounds it." Specifically, he had several friends in law enforcement, he had grown up around police, and he was attempting to gain employment in law enforcement, but ultimately wanted to transfer to the fire department.

The juror was asked whether, assuming a police officer and another citizen both observed an event, he would believe the police officer more because of his or her status, and he responded "possibly." After another juror stated that she had compassion for police officers that would sometimes cause her to attribute more reliability to their testimony because of their status and that would give her some pause about her ability to be fair, the following exchange occurred between the challenged juror and defense counsel:

[Defense counsel]: Would that be true for you? You know, there is going to be a police officer and there may be officers that are identified as forensic scientists, because you will hear they are police officers and forensic scientists that maybe you are going to give them a little more weight?

[Prospective juror]: I would have to assume yes, because police officers are the one people [sic] in this world that we are supposed to trust if we have a problem. If they can't be fair and honest, [whom] can you trust?

However, when asked if his relationships would create a bias toward the prosecution, he stated:

I look at it this way, if the prosecution can prove their case, then they have got it, hands down. I'm not going to sit here and say just because my brother is a cop does not mean that law enforcement is always correct. But at the same time, both sides have to prove their point to me.

The juror indicated that he understood the defense had no burden, that his relationships would not interfere with his ability to hold the prosecution to its burden of proving every element, and that both sides would get a fair trial from him. He indicated that he would critically evaluate the testimony of law enforcement personnel, stating that he would give weight to the testimony of an expert who could prove something "beyond a doubt," but he could not completely trust mere allegations, and that he would believe a witness who saw the actual incident over a police officer who did not.

Despite defendant's argument to the contrary, the circumstances here are not distinguishable from those in *People v. Vigil*, 718 P.2d 496 (Colo.1986). Considering the entire voir dire of this potential juror, there is evidence to support a finding that the juror would be impartial and decide the case on the law and the evidence. Therefore, the trial court did not abuse its discretion in denying defendant's challenge for cause.

## B.

■ Defendant challenged a second juror based on her views on the death penalty and previous traumatic experiences. Again, we conclude that the trial court did not abuse its discretion in denying the challenge for cause.

The juror indicated that she had "mixed emotions" on the death penalty, and when asked whether she could decide the case on the evidence without regard to sentencing issues, she responded: "Well, I'm human, and you know [I] definitely would give it my best shot. But there are no guarantees." However, she could not say whether her views would create a bias in favor of either the defense or the prosecution, indicating

that it would depend on the circumstances. When asked whether she could return a guilty verdict despite her views if the prosecution proved all elements beyond a reasonable doubt, she responded: "I think I have always said if there is a smoking gun and two reliable witnesses and probably—yeah, I don't think it [would] be a problem there."

The juror also indicated that she had a personal traumatic experience in her past and that a family friend had been murdered at an early age. When asked by the prosecutor whether she could set these experiences aside, she responded: "Here again, I would like to think so, but I'm human and, you know, I would hope that I could do that. But there are no guarantees. I want to be honest. I'm sharing with you." In response to a similar question posed by defense counsel she stated: "I would hope I can be fair, but I don't know. We had a traumatic experience and, you know, sometimes it stays with you." However, when asked whether she would pick herself as a juror if she were the prosecution or the defense, she responded: "I don't know. . . . I don't know the criteria you would use. I'm trying to be honest with you. . . . I believe in the jury system and the way it works and everyone's due process. A fair trial."

The juror consistently stated that she would do her best to fulfill her duties as a juror and at no time stated that she could not or would not act impartially or that she had a bias in favor of or against either side. *See People v. O'Neal, supra.* Thus, the record supports the trial court's ruling, and it was not an abuse of discretion to deny defendant's challenge for cause.

## II.

■ Defendant next contends that the information was insufficient as to the burglary charge because it did not fully advise him of the charges he was facing and prevented him from adequately preparing for trial. We disagree.

■ An information must provide the defendant with sufficient notice of the charged offenses and factual circumstances to allow adequate trial preparation, and it must pro-

tect the defendant from subsequent prosecution for the same offense. *People v. Pollard,* 3 P.3d 473 (Colo.App.2000). However, it is not necessary to allege every element that must be proved at trial. *People v. Moran,* 983 P.2d 143 (Colo.App.1999).

The information here alleged that defendant entered the apartment with "the intent to commit therein the crimes of Assault, Robbery, and False Imprisonment or other crimes against a person or property." Defendant argues the "other crimes against a person or property" portion of the allegation was too vague to allow adequate trial preparation because, defendant contends, it failed to specify the underlying offense of the burglary charge. We disagree.

■ We first note that, while the People assert that defendant failed to raise this issue in a pretrial motion, defendant filed a motion for a bill of particulars, requesting the legal and factual elements of the assault, robbery, false imprisonment, and "other crimes against person or property" charges. Defendant also filed a motion to strike all counts of the information on grounds that it did not provide adequate notice or opportunity to prepare for trial, and he raised the issue again when tendering proposed jury instructions. We therefore reject the prosecution's argument that defendant waived any objection to the form of the information.

■ However, notwithstanding defendant's argument that the case was wrongly decided, according to *People v. Williams,* 984 P.2d 56 (Colo.1999), an information is substantively sufficient if it tracks the language of the pertinent statute.

Here, the information included specific underlying offenses—assault, robbery, and false imprisonment—and tracked the general language of the second degree burglary statute in effect at the time. The statute then defined the offense in the following terms: "A person commits second degree burglary, if he knowingly breaks an entrance into, or enters, or remains unlawfully in a building or occupied structure with intent to commit therein a crime against a person or property." 1971 Colo. Sess. Laws, ch. 121 at 427

(now codified with amendments at § 18–4–203).

■ Defendant argues that inclusion of the "other crimes against a person or property" language allowed the prosecution to introduce evidence of any number of underlying crimes of which he was not apprised. While the People now argue that the "other crimes" language was mere surplusage, such extraneous language may constitute a defect in form. *See People v. Dickinson,* 197 Colo. 338, 592 P.2d 807 (1979).

■ The failure to specify an underlying offense is a defect in form, rather than substance. When the alleged defect in an information is one of form, the defendant must demonstrate prejudice from the lack of specificity; if the defendant had adequate notice of the underlying offense, then reversal is not warranted. *People v. Williams, supra.*

Here, even if the additional language were a defect in form, defendant has not demonstrated any resulting prejudice. Specifically, the trial court's order denying defendant's motion for a bill of particulars stated that "[the] District Attorney announced in open court that assault is the object crime of the burglary charged as the predicate offense for the felony murder [count]." At a hearing on the admissibility of prior acts of unlawful entry of women's apartments and sexual assault, the prosecutor agreed that the predicates to the burglary charge were third degree assault and simple robbery, and defense counsel noted that false imprisonment was also an alleged predicate and conceded that defendant had committed false imprisonment by tying the victim. Moreover, in arguing against the admissibility of the prior acts, counsel for defendant noted that the prosecution was not charging intent to commit sexual assault, and the prosecutor did not argue to the contrary. Nor did the prosecutor suggest other underlying offenses.

While defendant argues that he was forced "to defend against evolving prosecutorial theories" and was "oppressed by the introduction of evidence which he [could] not be prepared to meet," the record does not indicate that the prosecution attempted to introduce any evidence of predicate crimes other than robbery, assault, and false imprisonment. During trial, the court dismissed the robbery allegation, and the jury was instructed only on false imprisonment and third degree assault as underlying crimes for the burglary.

Thus, we conclude that defendant had sufficient notice of the elements and factual basis for these charges prior to trial. Hence, any error in the form of the information was harmless. *See People v. Williams, supra.*

### III.

Defendant next contends that a mannequin used by the prosecutor during trial to demonstrate the manner in which the victim was tied was highly prejudicial, and the trial court erred by allowing the prosecutor to make extensive use of it. Additionally, defendant argues that the mannequin was hearsay, and its use resulted in improper bolstering of witness testimony because the exhibit was prepared collaboratively. We disagree.

Neither the mannequin itself nor any photographs of it were included in the record on appeal. Thus, we presume that the trial court appropriately exercised its discretion in balancing the probative value and prejudicial effect of the mannequin under CRE 403. *See People v. Ullery,* 984 P.2d 586 (Colo. 1999). We also note, however, that based on the description of the mannequin in the parties' briefs, this case is readily distinguishable from *People v. Blue,* 189 Ill.2d 99, 244 Ill.Dec. 32, 724 N.E.2d 920 (2000), cited by defendant, in which a life-size mannequin torso wearing a blood and brain spattered police uniform was provided to the jury along with rubber gloves.

■ In any event, the mannequin here was not admitted as substantive evidence, but was used only demonstratively. To be admissible for such purpose, demonstrative or illustrative evidence must be shown to be reasonably accurate and correct, and admission of such evidence is within the trial court's discretion. *Martinez v. W.R. Grace Co.,* 782 P.2d 827 (Colo.App.1989). It is not necessary that the witness whose testimony is illustrated has personally prepared the

evidence. *McGovern v. Bd. of County Comm'rs*, 115 Colo. 347, 173 P.2d 880 (1946).

■ However, testimony regarding the accuracy of demonstrative evidence must be given by a person having personal knowledge of the scene depicted and may not be based on hearsay statements. *See Gosser v. Commonwealth*, 31 S.W.3d 897 (Ky.2000). If the demonstrative evidence illustrates the testimony of a witness with such personal knowledge, it is not hearsay. *State v. Randolph*, 190 Conn. 576, 462 A.2d 1011 (1983). The statements authenticating the demonstrative evidence are subject to cross-examination regarding their accuracy. It is these authenticating statements that allow admission of the evidence despite the hearsay rule. *State v. Furlough*, 797 S.W.2d 631 (Tenn. Crim.App.1990).

■ Here, testimony regarding the accuracy of the mannequin was given by a police officer and a paramedic who responded to the scene and observed the victim tied up in her apartment. Because these witnesses had personal knowledge of how the victim was tied, the mannequin illustrating their testimony was not hearsay.

■ Similarly, the mannequin did not, as defendant asserts, constitute a prior consistent statement impermissibly used to bolster the testimony of each witness who assisted in its preparation. The definition of a "statement" includes "nonverbal conduct of a person, if it is intended by him to be communicative." CRE 801(a). As discussed, however, the tying of the mannequin was not a statement, but was an illustration of trial testimony. Moreover, the circumstances of the tying of the mannequin and inconsistencies in the witnesses' recollections were subject to cross-examination. *See Arnold v. Burlington N. R.R. Co.*, 89 Or.App. 245, 748 P.2d 174 (1988).

## IV.

Defendant also contends that the trial court erred in denying his motion for a mistrial because a comment made by the prosecutor in closing argument highlighted defendant's failure to make a statement to police and thus violated his constitutional right to remain silent and right to a fair trial. Again, we disagree.

■ Defendant challenges the following statement made by the prosecutor in rebuttal closing argument: "Do you seriously think he knew the cop was standing out there when he jumped out the window? And when he does, does he say, 'oh, stop, there is a woman in there that will need your assistance' or does he try to—...." Defense counsel objected before the prosecutor could continue, and after the court overruled the objection, it directed the prosecutor to move on. Later, the court denied defendant's motion for a mistrial.

■ A prosecutor may not refer to a defendant's silence during custodial interrogation to create an inference of guilt because such comment penalizes the defendant for exercising his or her constitutional right to remain silent and violates due process of law. *People v. Hardiway*, 874 P.2d 425 (Colo.App. 1993). Here, however, there was no reference to silence in the face of custodial police interrogation. At the time of the referenced silence, defendant was not in custody, and there was no interrogation. Nor is there any indication that defendant was invoking his right to remain silent. *See United States v. Burson*, 952 F.2d 1196 (10th Cir.1991).

Comment on a defendant's noncustodial silence before receiving a *Miranda* warning, although not of constitutional import, can, however, raise evidentiary concerns. The primary rationale for excluding such reference is that under the rules of evidence, such silence and the inferences to be drawn therefrom are often irrelevant. *People v. Quintana*, 665 P.2d 605 (Colo.1983); *People v. Mares*, 705 P.2d 1013 (Colo.App.1985).

■ Here, the prosecutor's statement was not admitted as substantive evidence but was made in rebuttal closing argument. A trial court has discretion in determining whether a prosecutor's statements constitute inappropriate prosecutorial argument, and it should consider the context in which the statements were made. *See Harris v. People*, 888 P.2d 259, 264–65 (Colo.1995). *See also People v. Williams*, 996 P.2d 237, 244

(Colo.App.1999)(reviewing court takes into account defense counsel's "opening salvo").

A trial court is in the best position to evaluate the effects of allegedly prejudicial statements made by a prosecutor, and the grant or denial of a mistrial is within the discretion of the trial court. *People v. Elliston*, 181 Colo. 118, 508 P.2d 379 (1973). A denial of a motion for a mistrial is reviewed for an abuse of discretion, and "[a]n appellate court will not grant a new trial on the basis of prosecutorial misconduct unless the prejudice created thereby was so great as to result in a miscarriage of justice." *People v. Harris*, 914 P.2d 425, 432 (Colo.App.1995).

Here, we agree with the trial court that, understood in context, the comment was not improper. Rather, it was a fair response both to defense counsel's speculation that defendant believed at the time he left that the victim would live and to defendant's argument that his interaction with the police officer demonstrated his nonviolent nature, and it was therefore relevant.

Moreover, the prosecutor's comment was not flagrant and was merely an isolated reference. Thus, considering the closing arguments as a whole, we conclude that the trial court did not abuse its discretion in denying the motion for a mistrial.

### V.

The jury did not convict defendant of first degree intentional murder after deliberation, but instead convicted him of the lesser included offense of second degree murder (knowingly killing the victim). At the death penalty phase of the proceedings, the trial court determined, based on principles of collateral estoppel, that the jury's verdict precluded consideration by the three-judge panel of aggravating factors based on an intentional killing, including those contained in § 16–11–103(5)(g) and (k), C.R.S.2001. The trial court acknowledged that the jury did not necessarily find that defendant had acted unintentionally, but determined that it was "more likely than not" that the jury had so concluded. Therefore, the court precluded the prosecution from raising the aggravating factors based on intentional killing.

The People cross-appeal this ruling pursuant to § 16–12–102(1), C.R.S.2001. The People argue that the trial court applied the wrong standard and that, properly applied, the doctrine of collateral estoppel would not have barred consideration of the requested aggravating factors. We agree.

### A.

As a preliminary matter, we address the timeliness of the People's appeal. Defendant argues, under a variety of theories, that the People were required, under § 16–12–102(1), to appeal within forty-five days of the trial court's ruling at issue here. We disagree.

Generally, interlocutory appeals authorized by statute are permissive rather than mandatory, and failure to pursue an immediate appeal does not preclude appeal of the issue when it merges into the final judgment. *In re Application of Northwestern Mutual Life Ins. Co.*, 703 P.2d 1314 (Colo. App.1985). *See also Prefer v. PharmNetRx, LLC*, 18 P.3d 844 (Colo.App.2000).

Although § 16–12–102(1) does not characterize the "immediate appeals" permitted therein as "interlocutory," this general rule is equally applicable to allow appeals under that section to be filed within forty-five days after final judgment. *Cf. People v. Gallegos*, 946 P.2d 946, 952 (Colo.1997)(a decision appealable under § 16–12–102(1) "is not a final order in the sense of being a final disposition of the case," but rather is "an interlocutory order which the General Assembly determined should be treated as if it were a final order for purposes of permitting immediate appellate review before the case is concluded"). *See also People v. Lewis*, 791 P.2d 1152 (Colo.App.1989)(appeal under § 16–12–102(1) considered after the entire case was resolved).

Moreover, while the language of § 16–12–102(1) permits immediate appeal of certain specified issues, it does not preclude deferring an appeal until after a final judgment. Section 16–12–102(1) permits the prosecution to appeal "any decision of a court in a crimi-

nal case upon any question of law" pursuant to the procedural rules of the Colorado Supreme Court. The procedural rules, in turn, permit appeal from a "final judgment," C.A.R. 1(a)(1), and require that the People's appeal be filed within forty-five days of the entry of judgment or order appealed from. C.A.R. 4(b)(2).

■■■ A trial court order precluding consideration of aggravating factors for sentencing purposes does not end the litigation between the parties, but in the absence of an immediate appeal, remains modifiable until a final judgment is entered. *Cf. Jouflas v. Wyatt,* 646 P.2d 946 (Colo.App.1982). A judgment is final in a criminal case only after the defendant is acquitted, the charges are entirely dismissed, or the defendant is convicted and a sentence is imposed. Crim. P. 32(c); *Ellsworth v. People,* 987 P.2d 264 (Colo.1999). Here, the People's appeal was filed within forty-five days of defendant's sentencing and was, therefore, timely.

### B.

Defendant contends that the People's appeal requires review of the trial court's analysis of the evidence, arguments, and jury verdicts at trial, rather than a pure question of law, and is therefore not permitted under § 16–12–102(1). Defendant also contends that the appeal is moot because the People have no remedy and suffered no prejudice. We disagree with both contentions.

### 1.

■■■ A determination of the proper legal standard and application of that standard to particular facts is a question of law. *People v. Haley,* 41 P.3d 666 (Colo. 2001).

Here, the People do not challenge the trial court's ruling that the jury did not necessarily decide that defendant acted unintentionally but rather only challenge the court's use of a "more likely than not decided," rather than an "actually and necessarily decided" standard for collateral estoppel. Moreover, consideration of the instructions provided to the jury allows resolution of the issue without

regard to the evidence presented. *See People v. Badhawk,* 761 P.2d 753 (Colo.1988).

### 2.

■■■ Defendant argues that the People's appeal is moot because defendant cannot be resentenced, citing *People v. Martinez,* 22 P.3d 915 (Colo.2001). The People, however, are not challenging the sentence imposed by the three-judge panel but only the ruling of the trial court precluding consideration of certain aggravating factors. Moreover, to the extent the People lack a remedy because a defendant may not be resentenced, such lack of remedy does not require or permit dismissal of the appeal. *See* C.A.R. 4(b)(2); *People v. Jackson,* 972 P.2d 698 (Colo.App. 1998).

Defendant further contends that the cross-appeal is moot because the three-judge sentencing panel ultimately considered the issue of defendant's intent as a mitigating factor. The panel did not, however, consider the issue as an aggravating factor, and therefore the appeal is based on an alleged error that was prejudicial to the People. *See People v. Wolff,* 111 Colo. 46, 137 P.2d 693 (1943).

### C.

As to the merits of their argument, the People contend that the trial court applied an improper collateral estoppel standard when it determined that the intent issue was precluded because it was "more likely than not" that the jury found a lack of intent. The People rely on *Schiro v. Farley,* 510 U.S. 222, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994), and assert that the jury verdict did not preclude consideration of the aggravating factors for sentencing because defendant had not met his burden of establishing that the issue of intent had been "actually and necessarily decided" in his favor. We agree.

Collateral estoppel has been applied in the criminal context and requires, inter alia, that the issue to be precluded has been "actually and necessarily decided" in prior litigation. *Schiro v. Farley, supra,* 510 U.S. at 236, 114 S.Ct. at 792, 127 L.Ed.2d at 60–61. *Accord People v. Smith,* 938 P.2d 111, 113 (Colo. 1997)("The fundamental principle of collater-

al estoppel is that the defendant should be protected from having to relitigate an issue of ultimate fact once that issue has been determined by a valid and final judgment."); *People v. Allen,* 944 P.2d 541 (Colo.App. 1996).

Here, the parties agree that the issue of defendant's intent was "actually litigated," that is, the issue was raised in the earlier trial proceeding, but they do not agree that the issue was "necessarily adjudicated," that is, a determination of that issue was necessary to the judgment. *See Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78 (Colo. 1999).

■ An issue is not necessarily adjudicated, and thus is not barred by collateral estoppel, if a rational jury could have based its verdict upon a conclusion of ultimate fact other than that which the defendant seeks to preclude. *See Schiro v. Farley, supra; People v. Smith, supra.*

The jury here was instructed that the elements of first degree murder after deliberation included both intent and deliberation, while the elements of second degree murder required only a mental state of "knowingly." These instructions reflect that the jury's verdict could have been based, inter alia, on agreement that defendant intended to kill the victim but disagreement as to whether he formed this intent after deliberation. *Cf. People v. Morgan,* 637 P.2d 338 (Colo.1981).

Once a jury has concluded that the element of "after deliberation" has not been proved beyond a reasonable doubt, it must acquit a defendant of first degree intentional murder after deliberation regardless whether it believes the defendant acted with intent. Thus, a finding that defendant lacked intent was not necessary to the judgment because the jury's verdict here could have been reached without making such a finding. Therefore, regardless of what was "likely" to have happened, under the proper standard for the application of collateral estoppel, the issue was not "necessarily decided." *See Bebo Constr. Co. v. Mattox & O'Brien, P.C., supra,* 990 P.2d at 86 ("issues that were actually litigated and decided, but were not necessary to the final outcome of the case,

are not subject to collateral estoppel in a future case").

Defendant's argument to the contrary notwithstanding, *People v. Harlan,* 8 P.3d 448 (Colo.2000), does not require a different result. Under *Harlan,* "after deliberation" is considered to be a part of the specific intent element of first degree murder. However, *Harlan* indicates only that "after deliberation" includes the concept of intent, and not that intent includes the concept of "after deliberation." The trial court correctly recognized this difference when it determined that the only outcome the jury could not have reached was that defendant acted deliberately but without intent.

Because defendant did not carry his burden of demonstrating that the issue of intent had been decided by the jury in his favor and that such a finding was necessary to the judgment, we need not decide whether collateral estoppel, or some other form of issue preclusion, is otherwise applicable in these circumstances.

The trial court's ruling that collateral estoppel bars consideration of an issue "more likely than not" decided by the jury is disapproved. The judgment is affirmed.

Judge CASEBOLT and Judge NIETO concur.