The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 25, 2018

**2018COA6**

**No. 15CA1395 People v. Palacios — Criminal Law — Fifth Amendment — Pre-Trial Identification; Evidence — Demonstrative Evidence — Admissibility**

In this criminal case, a division of the court of appeals first concludes that the police's placement of a suspect's photograph in a particular position in a photo array, after the witness had selected a photograph in that position from a different photo array, does not render the identification procedure unduly suggestive. Accordingly, the division affirms the district court's denial of the defendant's motion to suppress the identification evidence.

Next, the division concludes that the admission of any demonstrative aid, including the full-size mock-up of the crime scene at issue in this case, is governed by the four-part test articulated in *People v. Douglas*, 2016 COA 59. To be admissible

under that test, the demonstrative aid must be authenticated, it must be relevant, it must be a fair and accurate representation of the evidence to which it relates, and its probative value must not be substantially outweighed by the danger of unfair prejudice.

Because the demonstrative aid satisfied the test for admissibility, the division concludes that the district court did not abuse its discretion in allowing the prosecution to use the demonstrative aid during certain witness testimony and closing argument.

Court of Appeals No. 15CA1395
Jefferson County District Court No. 13CR2977
Honorable Todd L. Vriesman, Judge
Honorable Christopher J. Munch, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jose Luis Palacios,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE HARRIS
Terry and Plank*, JJ., concur

Announced January 25, 2018

Cynthia H. Coffman, Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     Defendant, Jose L. Palacios, was convicted of felony murder, aggravated robbery, and other offenses after a drug-deal-turned-robbery ended in the shooting death of the victim by Palacios's accomplice.

¶ 2     On appeal, Palacios challenges his convictions on two grounds.  First, he argues that the court erred in failing to suppress a witness's identification as the product of an impermissibly suggestive identification procedure.  Second, he argues that the court erred in allowing the prosecution to use a full-size reconstructed model or "mock-up" of the crime scene during two prosecution witnesses' testimony and again during closing argument.  We reject both arguments and therefore affirm.

I.     Motion to Suppress Identification

¶ 3     We begin with some factual background relevant to the motion to suppress.

¶ 4     The murder occurred in a detached garage, which the victim used as his residence.  Two witnesses were present in the garage at the time of the crime: the victim's marijuana supplier and the victim's girlfriend.

¶ 5     On the night of the murder, police presented the girlfriend with a photo array.  By this time, police knew that two perpetrators had committed the crime and they had identified the accomplice as a suspect.  The array included a photo of the accomplice in position no. 1, and five "filler" photos.  The girlfriend selected photograph no. 1 as the accomplice and a filler photograph in position no. 3 as possibly depicting the second perpetrator.[1]

¶ 6     Two days later, police showed the girlfriend another photo array, in an effort to identify the true second perpetrator.  The array included a photograph of a suspect — not Palacios — in position no. 3, and five filler photographs.  The girlfriend selected a filler photograph in position no. 5 as a photo of the second perpetrator.

¶ 7     Police soon learned that Palacios was likely the second perpetrator.  So they showed the girlfriend a third photo array, this time with a photograph of Palacios in position no. 3, and five filler

---

[1] The record was inconsistent regarding the girlfriend's initial identifications.  In the affidavit for an arrest warrant, the officer stated that the girlfriend identified the accomplice as the person in either photograph no. 1 or photograph no. 3.  At the suppression hearing, however, a different police officer testified that the girlfriend selected photograph no. 1 as the accomplice and photograph no. 3 (a filler) as the defendant.  The inconsistency does not affect our analysis.

photographs.  The girlfriend identified Palacios as the second perpetrator.

¶ 8     Palacios filed a motion to suppress the girlfriend's out-of-court identification and to exclude any subsequent in-court identification. He contended that the police had "induced" the girlfriend's identification of Palacios by "putting the suspect in the same position as the filler that had already been selected."  The court denied the motion, reasoning that because the girlfriend had previously selected photos in position nos. 1, 3, and 5, simply placing Palacios's photo in position no. 3 did not render the array impermissibly suggestive.

¶ 9     On appeal, Palacios reasserts his argument that the final photo array was impermissibly suggestive because his photo was placed in position no. 3, after the girlfriend had selected a filler photograph in position no. 3 from the initial array.

¶ 10    The constitutionality of pretrial identification procedures is a mixed question of law and fact.  *People v. Borghesi*, 66 P.3d 93, 104 (Colo. 2003).  While we defer to the district court's findings of fact, we may give different weight to those facts and reach a different conclusion.  *Id.*

3

¶ 11    Our review of an identification procedure entails a two-part analysis. *Bernal v. People*, 44 P.3d 184, 191 (Colo. 2002). First, we must decide whether the identification procedure was unduly suggestive, which the defendant has the burden of proving. *Id.* Second, if the identification procedure was unduly suggestive, the burden shifts to the prosecution to show that the identification was nevertheless reliable under the totality of the circumstances. *Id.*

¶ 12    We look to various factors to determine whether a pretrial photographic identification procedure was impermissibly suggestive, including the size of the photo array, the manner of its presentation by the officers, and the details of the photographs themselves. *Id.* Palacios does not challenge the size of the array or the details of the photographs themselves. Our inquiry, then, is limited to whether the officers' presentation of the photo array rendered the identification procedure unduly suggestive.

¶ 13    In general, the manner of an officer's presentation will result in an unduly suggestive identification procedure when "the procedure used to present the [array] . . . suggest[s] a particular suspect." *People v. Wilford*, 111 P.3d 512, 515 (Colo. App. 2004). Thus, an improper manner of presenting the array would include

4

circumstances where the police inform the witness that a suspect has been arrested or urge the witness to identify a suspect from the array. *Cf. People v. Hogan*, 114 P.3d 42, 50 (Colo. App. 2004) (manner of presenting array was not unduly suggestive where police did not tell victim that a suspect had been arrested and advisement form told victim that she did not have to identify anyone); *see also Smiley v. State*, 111 A.3d 43, 50 (Md. 2015) ("Suggestiveness can arise during the presentation of a photo array when the manner itself of presenting the array to the witness . . . indicates which photograph the witness should identify."); *State v. Thamer*, 777 P.2d 432, 435 (Utah 1989) ("The words and actions of law enforcement officials who present the photos should convey an attitude of disinterest . . . . Any manipulation indicating that the police believe one of the photographs portrays the accused could lead to a finding of suggestiveness.").

¶ 14    But the mere placement of a defendant's photo in a particular position, without more, does not render the identification procedure impermissibly suggestive. *See, e.g., Wilford*, 111 P.3d at 514 (holding that no "one position in a six-photo array is suggestive" and concluding that officer's placement of defendant's photo in

5

middle of top row did not amount to an impermissibly suggestive presentation); *People v. Duncan*, 754 P.2d 796, 798 (Colo. App. 1988) (successive photo arrays containing the defendant's photograph in the same position were not unduly suggestive).

¶ 15    That the girlfriend had earlier selected a photo in position no. 3 cannot raise the specter of suggestiveness in light of her additional selections of photos in position nos. 1 and 5.  Clearly, position no. 3 did not have special suggestive properties, as Palacios's argument would apply with equal force if the officer had placed his photo in either position no. 1 or 5.  Accordingly, we are confident that the mere placement of Palacios's photo in position no. 3 did not "interject an unnecessary risk of misidentification." *People v. Loyd*, 751 P.2d 1015, 1017 (Colo. App. 1988).

¶ 16    Because Palacios has failed to carry his burden to show that the photo array was unduly suggestive, we conclude (without further inquiry into the reliability of the identification) that the court properly denied the motion to suppress the girlfriend's identification.  *See People v. Singley*, 2015 COA 78M, ¶ 14 (If the defendant fails to meet his burden at the first step of the analysis,

"the identification is admissible, [and] no further inquiry is required.").

## II. Demonstrative Evidence

¶ 17    At trial, the prosecution used a full-size mock-up of the garage as a demonstrative aid[2] during the testimony of a sheriff's department investigator and the eyewitness drug supplier. The prosecution also referred to a smaller version of the mock-up during closing argument. Palacios says the court erred in permitting the prosecution to use these demonstrative aids because their size was inaccurate and the inaccuracy rendered the mock-ups misleading and therefore unfairly prejudicial.

¶ 18    We review the district court's decision to allow a party to use a demonstrative aid for an abuse of discretion. *See People v. Richardson*, 58 P.3d 1039, 1045 (Colo. App. 2002). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Hagos*, 250 P.3d 596, 608 (Colo. App. 2010). In assessing whether a trial court's decision is

---

[2] The parties refer to the mock-up as a demonstrative exhibit, but it was not admitted into evidence as an exhibit and so we refer to it as a demonstrative aid.

arbitrary, unreasonable, or unfair, we look to whether the trial court's decision fell within a range of reasonable options. *Churchill v. Univ. of Colo.*, 2012 CO 54, ¶ 74. Thus, a trial court abuses its discretion only when its decision exceeds the bounds of the rationally available choices. *Id.*; *see also Hagos*, 250 P.3d at 610 ("The essence of a discretionary decision is that the trial court can choose among valid options in resolving an issue.").

¶ 19    Demonstrative aids can take various forms, including diagrams, maps, computer animations, or, as relevant here, models or mock-ups. *See* Black's Law Dictionary 675 (10th ed. 2014). Regardless of the particular form, demonstrative aids generally serve the same purpose: to illustrate or clarify a witness's testimony. In other words, the primary purpose of a demonstrative aid is to "illustrate other admitted evidence and thus to render it more comprehensible to the trier of fact." 2 George E. Dix et al., *McCormick on Evidence* § 214 (Kenneth S. Broun ed., 6th ed. 2006) (McCormick); *see also Intermill v. Heumesser,* 154 Colo. 496, 501, 391 P.2d 684, 686 (1964) ("[D]emonstrative aids should be encouraged since they give the jury and the court a clear

comprehension of the physical facts, certainly much clearer than one would be able to describe in words.").

¶ 20    To be used for this purpose, the demonstrative aid must (1) be authentic, meaning the proponent must demonstrate "that the evidence is what it is claimed to be," *People v. Cauley*, 32 P.3d 602, 607 (Colo. App. 2001); (2) be relevant, meaning that it will assist the trier of fact in understanding other testimonial and documentary evidence, *People v. Douglas*, 2016 COA 59, ¶ 22; *see also* McCormick § 217 (if a demonstrative aid "assists the trier's understanding, it is relevant"); (3) be a "fair and accurate representation of the evidence to which it relates," *Douglas*, ¶ 22 (quoting *Cauley*, 32 P.3d at 607); and (4) not be unduly prejudicial, meaning its probative value must not be substantially outweighed by its danger for unfair prejudice, *id.*; *see also Richardson*, 58 P.3d at 1045.

¶ 21    The People say this four-part test governs only the use or admissibility of a computer animation, and that other demonstrative aids or exhibits, like a model or mock-up, may be used or admitted upon a mere showing that the model is a "reasonably accurate" version of what it purports to depict.  But the

9

People's standard would allow the use of an irrelevant or unfairly prejudicial demonstrative aid or exhibit, a standard that is entirely inconsistent with the rules of evidence. *See, e.g.*, CRE 401, 403.

¶ 22 For his part, Palacios argues only that the mock-up of the garage was too small to satisfy the "fair and accurate" prong of the test. He insists that the full-size mock-up, which the prosecutor used during the witnesses' testimony, did not show the west side of the bed where the girlfriend was hiding during the shooting. This deficiency made the demonstrative aid "misleading and confusing," he says.

¶ 23 As an initial matter, Palacios's argument overstates the evidence. The full-size mock-up of the garage did depict the area next to the bed. The sheriff's investigator testified that the recreated scene showed the "approximate[] . . . amount of space" between the bed and the western wall of the garage. And, during this part of the testimony, defense counsel acknowledged that she was standing in the part of the mock-up at issue by asking "and right now . . . I am standing on the — in the area on the western side of the bed in the demonstrative, correct?" to which the investigator responded, "That is correct."

10

¶ 24    At most, Palacios can establish that the approximately twenty-foot-wide mock-up was about twenty-four inches smaller than the actual garage. The sheriff's investigator readily admitted as much, after he and defense counsel took measurements of the mock-up during his testimony and compared them to measurements of the actual scene.

¶ 25    But this minor discrepancy does not render the demonstrative aid so inaccurate that its use represents an abuse of the district court's discretion.

¶ 26    For one thing, as Palacios concedes, a demonstrative aid need not be "exact[ly]" identical in every detail to the actual scene it depicts, *Douglas*, ¶ 45 (quoting *Clark v. Cantrell*, 529 S.E.2d 528, 537 (S.C. 2000)); it need only be "substantially similar," *id.* The sheriff's investigator testified that the full-size model was a "fair and accurate representation of the scene," and the second witness testified that, though it was "a little smaller," the model "roughly and accurately" depicted the garage. In our view, the record demonstrates that the mock-up was substantially similar to the actual garage.

11

¶ 27 For another thing, the minor discrepancy was apparently attributable to size constraints of the available courtrooms. The district court's own courtroom was too small for the mock-up, so the prosecution set up the demonstrative aid in the larger courtroom. That space was still too small for a mock-up that precisely mirrored the actual scene, but the only room that might have allowed for a same-size model of the garage was the jury assembly room, an option the court considered and rejected because transporting Palacios to and from that room would have required extra security, which, in turn, would have revealed his custodial status to the jury.

¶ 28 We cannot say that the court's decision to allow the use of the substantially similar mock-up in the larger courtroom exceeded the bounds of the rationally available choices. *See Churchill*, ¶ 74.

¶ 29 Our conclusion is bolstered by the absence of any argument that the twenty-four-inch discrepancy was prejudicial. Palacios does not explain how the jury would have been misled by the discrepancy or even the nature of the confusion he says likely resulted from the use of the mock-up. "[I]t is not this court's function to speculate as to what a party's argument might be."

12

*Beall Transp. Equip. Co. v. S. Pac. Transp.*, 64 P.3d 1193, 1196 n.2 (Or. Ct. App. 2003); *see also Mauldin v. Lowery*, 127 Colo. 234, 236, 255 P.2d 976, 977 (1953) ("It is the task of counsel to inform us . . . both as to the specific errors relied on and the grounds and supporting facts and authorities therefor.").

¶ 30    Even if we were inclined to hypothesize about potential prejudice, we would be unable to identify any.  The sheriff's investigator who provided the information for the demonstrative aid had personal knowledge of the scene and was subject to cross-examination regarding the accuracy of the mock-up.  *See Richardson*, 58 P.3d at 1046.  The prosecution introduced into evidence dozens of photographs of the scene, including at least five enlargements of the interior of the garage.  The jury therefore had access to images of the actual crime scene and could determine for itself the accuracy and helpfulness of the mock-up.  Indeed, the district court cautioned the jury that the mock-up was simply a demonstrative aid and instructed that "if, in your view, there is some discrepancy between a demonstrative [aid] and more original evidence, you'll go with the original evidence and not with a mere demonstration."  *See Douglas*, ¶ 30 (stating that courts should give

a limiting instruction that explains that a demonstrative aid is the proponent's version of the scene it depicts). And finally, to the extent Palacios suggests that the mock-up might have misled the jury about the girlfriend's location in the garage, we note that the demonstrative aid was neither used nor present in the courtroom during the girlfriend's testimony.

¶ 31    For the same reasons, we conclude that the district court did not abuse its discretion in allowing the government to use only a portion of the full-size mock-up as a demonstrative aid during closing argument. Palacios says that the smaller version encompassed only "25 percent" of the original demonstrative aid and was laid out "in a different direction from" the mock-up used during testimony. But defense counsel acknowledged that the smaller mock-up was accurate, as far as it went:

> To [the prosecutor's] credit, he's marked hash tags on here, and it looks like those are the measurements that [the investigator] gave him. So the measurements, I guess, are precise to the wall. I even nitpicked the 9 inches from the edge of there. So I think the measurements are close, but I think this is entirely misleading doing it this way.

¶ 32   We do not understand — and Palacios does not explain — why the jury would have been misled by a demonstrative aid that showed only a portion of the garage.  The jury had already viewed the full-size mock-up and determined its usefulness in understanding the evidence.  The court specifically reminded the jury that the smaller mock-up "d[id] not constitute evidence."  And, from our reading of the record, it does not appear that the prosecution used the mock-up in any significant way during the argument.  *Holland v. United States*, 209 F.2d 516, 524 (10th Cir.) ("Ultimately it was for the jury to determine whether [the demonstrative aids] truly portrayed the evidence.  Their use was no more than an argument which the jury was of course free to reject or accept in its discretion."), *aff'd*, 348 U.S. 121 (1954).

¶ 33   Accordingly, we perceive no error in the district court's decision to allow the prosecution to use the demonstrative aids.

### III.   Conclusion

¶ 34   The judgment of conviction is affirmed.

JUDGE TERRY and JUDGE PLANK concur.

15